The Honorable Frank Glidewell State Representative 10409 Castleton Street Fort Smith, AR 72908-9392
Dear Representative Glidewell:
I am writing in response to your request for an opinion on the following questions:
Can any Quorum Court in the State of Arkansas establish a planning commission that exercises authority as follows?
1. Can any Quorum Court in the State of Arkansas establish a planning commission that exercises authority only over land covered by the five mile jurisdiction where a municipality may or can evoke [sic] authority?
2. Can any Quorum Court in the State of Arkansas establish a planning commission that exercises authority excluding any land in the county not covered by the five mile jurisdiction and land inside any municipality?
3. If the Quorum Court can establish a planning commission covering only the land in the five mile area, will the county planning commission's authority supersede the municipality's authority in the five mile area?
4. Because all municipalities are within the county, can a county planning commission evoke [sic] power over the land within the municipality?
5. The current situation allows the municipality to invoke the power within a five mile area. Does this constitute a "taking" in violation of the U.S. Constitution or violate the Arkansas Constitution?
6. Does the current situation of regulation of county residents without representation of county residents violate Due Process under the U.S. or Arkansas Constitutions?
7. Are there any other foreseeable issues this action may cause under state or federal law?
RESPONSE
The answer to your first question is theoretically "yes," in my opinion, but the precise extent of the county planning board's "authority" will depend upon the particular authority at issue, and whether city is exercising its exclusive jurisdiction under the municipal planning subchapter of the Arkansas Code, as explained further herein.[1] With regard to your second question, I assume that the inclusion of the word "not" in this question was inadvertent, and that you intend to ask whether a quorum court could establish a planning commission that exercises authority only in the unincorporated area, and excluding land covered by a municipality's five-mile jurisdictional area. The answer to this question is "yes," in my opinion. It is difficult to provide a thorough and adequate response to your third question without knowing precisely what "authority" is at issue. I can only opine generally that the county planning board's jurisdiction over land development will not supersede the municipality's validly enacted regulations to control the development of land in the five-mile area, but that the county board's zoning jurisdiction will extend to the area if the city is not situated on a navigable stream. The answer to your fourth question is "no." Your fifth question does not lend itself to a "yes" or "no" answer because the "takings" analysis requires a factual inquiry. The answer to your sixth question is generally "no," in my opinion. In response to your seventh question, I cannot in the limited format of this opinion speculate regarding any other foreseeable issues.
Question 1 — Can any Quorum Court in the State of Arkansas establish a planning commission that exercises authority only over land covered by the five mile jurisdiction where a municipality may or can evoke [sic] authority?
Although you have not stated how you envision limiting the planning body's range of authority in this regard, or precisely what authority is contemplated by this question, I will note that a quorum court can define the authority of a county planning board, once created, see n. 1, supra, through the adoption of a plan for the development of part of the county as follows:
The county planning board, by majority vote of its entire membership, may recommend to the county quorum court the adoption, revision, or rescission of an official plan for the county or zoning, subdivision, setback, or entry control ordinances referred to as implementing ordinances in this subchapter.
A.C.A. § 14-17-207(a) (Supp. 2005) (emphasis added).
The county plan shall be made with the general purpose of guiding and accomplishing a coordinated, efficient, and economic development of the county, or part thereof.
A.C.A. § 14-17-206(a) (Supp. 2005) (emphasis added).
The emphasized phrase "or part thereof" would appear to afford general authority for limiting the plan's geographic area.
I note that a zoning ordinance may also cover "all or part of the unincorporated area of the county" pursuant to A.C.A. § 14-17-209 (Repl. 1998), as amended by Act 565 of 2007. ("The county planning board shall have authority to prepare, or to cause to be prepared, a zoning ordinance for all or part of the unincorporated area of the county, which ordinance shall include both a map and a text.") Id. at (a).
With regard to your specific question concerning the land covered by a municipality's "five mile jurisdiction," it should be explained that this has reference to land lying within five miles of a city's corporate limits, which as discussed further below, is included as part of each city's territorial jurisdiction under the Municipal Planning subchapter of the Arkansas Code. See A.C.A. § 14-56-413 (Repl. 1998). As a general proposition, I believe a county development plan and/or zoning ordinance might be limited to this land. However, a number of important limitations or qualifications attend this proposition.
First and foremost is the fact that the city's jurisdiction over this five mile area is "exclusive" under the Municipal Planning subchapter if the city has chosen to exercise such jurisdiction respecting the development of land. Id. at (a). As explained below in response to your third question, this will effectively nullify the county planning board's regulatory authority over the development of land in the area. Additionally, if the city is located on a navigable stream and has a population of 8,000 or more, such city will have zoning as well as planning authority in the five mile area, pursuant to subsection14-56-413. See generally Op. Att'y Gen. 91-340. While a county generally retains its zoning power in the growth area of a city that is exercising its subdivision jurisdiction, see A.C.A. 14-17-209 and Op. Att'y Gen.99-274, the exception under subsection 14-56-413 with respect to cities on navigable streams must be noted. This exception is set forth in my response to your third question.
In considering whether a county might exercise planning or zoning authority only over a city's five-mile jurisdictional area, it also bears mentioning that the subchapter governing county planning envisions the development of the county in coordination with municipalities, along with the state and other authorities. In setting forth the powers and duties of a county planning board, A.C.A. § 14-17-205 states:
The board may prepare and recommend an official plan for the development of the county. The board shall have the authority to confer with federal, state, municipal, and other county and regional authorities regarding matters pertaining to or affecting the planning or development of the county, or vice versa, for the purpose of assuring proper coordination of county development with that of other political subdivisions.
Id. at (a) (Repl. 1998) (emphasis added). Subsection 14-17-206 is more explicit in providing:
In the preparation of all plans for the county or part of a county, the county planning board shall:
Provide that plans are consistent with state plans and other related regional, county, and municipal plans, and school district boundaries in order to avoid inconvenience and economic waste and to assure a coordinated and harmonious development of the county, region, and state[.]
Id. at (d) (Supp. 2005). See also A.C.A. § 14-17-206(a), supra (identifying the county plan's "general purpose of guiding and accomplishing a coordinated, efficient, and economic development of the county, or part thereof.")
Similarly, with regard to zoning, there is a requirement that "due consideration" be given to municipal plans. Subsection 14-17-209 states: "In the development of zoning districts and their boundaries, due consideration shall be given to the adopted plans of municipal planning commissions for extraterritorial planning areas." Id. at (b). While it is unclear precisely what this contemplates, in my opinion it at least means that the county must give some deference to a city's plans for the five mile growth area when the county designates the "shape, size, or characteristics" of zoning districts for the area. Id. at (a) ("The zoning ordinance shall designate districts or zones of such shape, size, or characteristics as deemed advisable for all, or part, of the unincorporated area of the county.")
If there are one or more specific actions being contemplated by a particular quorum court that underlie your general question, I obviously am unable to determine whether those actions comport with the above-discussed requirements concerning county planning and zoning. I can only opine generally that a county plan or zoning ordinance that covers only a city's five mile growth area is not per se unauthorized. You have provided no information, however, regarding the quorum court's objective in limiting the geographic range of the planning board's authority to this area. Nor have you identified the "authority" to be exercised. I am consequently unable to definitively opine whether any undisclosed actions contemplated by a particular quorum court are consistent with state law. The quorum court may wish to seek the advice of local counsel who would be better positioned to evaluate the proposal in light of the particular surrounding circumstances.
Question 2 — Can any Quorum Court in the State of Arkansas establish a planning commission that exercises authority excluding any land in the county not covered by the five mile jurisdiction and land inside any municipality?
The wording of this question is confusing. The land that is "not covered by" a municipality's corporate area and its five mile growth area would be the remaining unincorporated part of the county. As worded, therefore, this question seems to be the same as the first: Can a county planning board exercise authority only in the five mile area? Because I assume that you did not intend to ask the same question, I will ignore the word "not" and will interpret your inquiry to be whether a quorum court could establish a planning commission that exercises authority only in the unincorporated area, and excluding land covered by a municipality's five-mile jurisdictional area.
The answer to this question is generally "yes," in my opinion. Indeed, this would seem consistent with the statutes governing county and city planning, and more specifically the relationship between county and city control over land development within a city's five mile jurisdictional area. In my opinion, however, the quorum court should nevertheless be mindful of whether the city is exercising its planning, or perhaps zoning,[2] jurisdiction in the five mile area when the quorum court approves the county's planning and/or zoning regulations for the remaining unincorporated area. If the city is not exercising its jurisdiction and has no regulations for the area, there may be some question whether the quorum court has properly taken into account the "welfare of the people of the county" when it adopts the county plan or zoning ordinance and excludes this five-mile area. See A.C.A. §§14-17-206(a) (requiring that the county plan "seek to best promote the health, safety, convenience, prosperity, and welfare of the people of the county[;]") and 14-17-209(a) (stating that the county zoning ordinance "may provide for . . . such other matters as are necessary to the health, safety, and general welfare of the county.") Again, it would be advisable for the quorum court to seek local counsel's advice in considering these matters.
Question 3 — If the Quorum Court can establish a planning commission covering only the land in the five mile area, will the county planning commission's authority supersede the municipality's authority in the five mile area?
It depends upon the particular "authority" at issue. The answer is generally "no" regarding land use planning and control over the development of land if the city is exercising its planning jurisdiction in the five-mile area, as reflected by its planning map. The answer is also "no" regarding zoning control over such area if the city is located on a navigable stream and has a population of 8,000 or more.
Subsection 14-56-413 of the Arkansas Code provides:
(a)(1)(A) The territorial jurisdiction of the legislative body of the city having a planning commission, for the purpose of this subchapter, shall be exclusive and shall include all land lying within five (5) miles of the corporate limits.
(B) If the corporate limits of two (2) or more municipalities of the first or second class are less than ten (10) miles apart, the limits of their respective territorial jurisdictions shall be a line equidistant between them, or as agreed on by the respective municipalities.
(2)(A) Cities now having eight thousand (8,000) population or more and situated on navigable streams shall have the authority to administer and enforce planning and zoning ordinances outside their corporate limits as follows:
(i) For cities of eight thousand (8,000) to fifty thousand (50,000) population, the jurisdictional area will be one (1) mile beyond the corporate limits;
(ii) For cities of fifty thousand (50,000) to one hundred fifty thousand (150,000) population, the jurisdictional area will be two (2) miles beyond the corporate limits;
(iii)(a) For cities of one hundred fifty thousand (150,000) population and over, the jurisdictional area will be three (3) miles beyond the corporate limits.
(b) Upon July 3, 1989, no city with a population in excess of one hundred fifty thousand (150,000) persons and which is situated on a navigable stream shall exercise any zoning authority outside the boundaries of the county wherein it is located without the approval of the quorum court of the county wherein the city is not located and the approval of the governing bodies of all other cities having zoning authority over the area.
(B) The city populations will be based on the latest available United States census data.
(C) The provisions of subdivision (a)(2) of this section shall not restrict the powers of any city currently exercising the authority authorized under this subdivision.
(b)(1) The planning commission shall designate the area within the territorial jurisdiction for which it will prepare plans, ordinances, and regulations.
(2) A description of the boundaries of the area shall be filed with the city clerk and with the county recorder.
A.C.A. § 14-56-413 (Repl. 1998) (emphasis added).
This statute grants exclusive regulatory authority to cities in areas, including the five-mile area outside corporate limits, that have been designated for regulation on city planning area maps. Id. at (a)(1)(A) and (b) and A.C.A. § 14-56-412(c) (Repl. 1998) ("The [city planning] commission shall prepare and maintain a map showing the boundaries of the area within the territorial jurisdiction for which it will prepare plans, ordinances, and regulations[,] . . . known as the planning area map.") See also A.C.A. § 14-56-422(5) (Supp. 2005) ("The city clerk shall file the plans, ordinances, and regulations as pertain to the territory beyond the corporate limits with the county recorder of the counties in which territorial jurisdiction is being exercised[;]") and Op. Att'y Gen. 2001-234 (noting the presumption under A.C.A. §14-56-417, with respect to land development regulations, that a city will exercise its jurisdiction in the area included on the planning area map).[3] Specifically, cities are granted those planning powers set out in the Municipal Planning subchapter of the Code, A.C.A. § 14-56-401
through — 425 (Repl. 1998 and Supp. 2005), including the power to adopt implementing measures, such as subdivision regulations. Id. at -417.
Recognition of this exclusive authority of cities is also reflected in the statutes governing county planning. More specifically, A.C.A. §14-17-208(i), which governs counties' authority to enact ordinances concerning subdivision, setback, and entry control ordinances, states:
In unincorporated areas adjoining the corporate limits of a municipality in which the authority to control the subdivision of land is vested and is being exercised in accordance with and under the provisions of 14-56-401 — 14-56-408 and 14-56-410 — 14-56-425, or any amendments thereto or thereof, or other acts of a similar nature enacted by the General Assembly, the municipal authority shall have subdivision jurisdiction, but shall transmit copies of proposed plats for the areas to the county planning board and the board of directors of each affected school district for review and comment, which shall be made to the municipal authority within sixty (60) days from the time it is received by the county planning board and the board of directors of each affected school district unless further time is allowed by the municipal authority.
A.C.A. § 14-17-208(i) (Supp. 2005) (emphasis added). See also id. at (l)(1) ("Following the adoption of any subdivision, setback, or entry control ordinances by the court, the county recorder shall not accept any plat in the unincorporated area of the county not within the exercised extraterritorial jurisdiction of a municipality for record without the approval of the county planning board." Emphasis added.)
Accordingly, if a city is exercising its authority in the five-mile adjacent unincorporated area, that authority is to be exclusive. This includes zoning authority if the city is situated on a navigable stream and has a population of 8,000 or more.[4] A county planning board's authority in a municipality's five mile extra-territorial area therefore depends upon certain factors unique to the municipality relative to its planning, and possible zoning, authority. I can opine generally that the county planning board's control over subdivision development will not supersede the municipality's validly enacted subdivision regulations for the five-mile area, but that the county board's zoning jurisdiction will extend to the area if the city is not situated on a navigable stream. Ultimately, however, the answer to your question depends upon the particular "authority" at issue.
Question 4 — Because all municipalities are within the county, can a county planning commission evoke [sic] power over the land within the municipality?
The answer to this question is "no," in my opinion. It is clear from a review of the subchapter governing county planning boards that the authority of such a board extends to the unincorporated area of the county. Specifically, A.C.A. § 4-17-208 (Supp. 2005) provides as follows regarding approval of plats:
(l)(1) Following the adoption of any subdivision, setback, or entry control ordinances by the court, the county recorder shall not accept any plat in the unincorporated area of the county not within the exercised extraterritorial jurisdiction of a municipality for record without the approval of the county planning board.
(2) The county recorder shall not accept any plats in the unincorporated area of the county without the county court's acceptance of:
(A) Roads for perpetual maintenance; and
(B) Any dedication of land for public purposes.
(Emphasis added.)
Similarly, regarding zoning authority, A.C.A. § 14-17-209(a) (Repl. 1998), as amended by Act 565 of 2007, states in relevant part:
The county planning board shall have authority to prepare, or to cause to be prepared, a zoning ordinance for all or part of the unincorporated area of the county, which ordinance shall include both a map and a text. . . . The zoning ordinance shall designate districts or zones of such shape, size, or characteristics as deemed advisable for all, or part, of the unincorporated area of the county.
(Emphasis added.)
Question 5 — The current situation allows the municipality to invoke the power within a five mile area. Does this constitute a "taking" in violation of the U.S. Constitution or violate the Arkansas Constitution?
Both the Fifth Amendment to the U.S. Constitution and Article 2, § 22 of the Arkansas Constitution prohibit the taking of private property for public use without just compensation. The question of whether such a "taking" has actually occurred is a question of fact. See generally Lucas v. South Carolina Coastal Council, 502 U.S. 966 (1991); Hodel v. Virginia Surface Mining Reclamation Association, 452 U.S. 264
(1981); Op. Att'y Gen. 95-189. As the court in Hodel, supra, made clear, a "takings" analysis can only be definitively undertaken in light of the specific facts of a particular claim:
. . . the constitutionality of statutes ought not be decided except in an actual factual setting that makes such a decision necessary. [Citations omitted.] Adherence to this rule is particularly important in cases raising allegations of an unconstitutional taking of private property. Just last Term, we reaffirmed that
"this Court has generally `been unable to develop any "set formula" for determining when "justice and fairness" require that economic injuries caused by public action be compensated by the government, rather than remain disproportionately concentrated on a few persons.' Rather, it has examined the `taking' question by engaging in essentially ad hoc, factual inquiries that have identified several factors — such as the economic impact of the regulation, its interference with reasonable investment backed expectations, and the character of the government action — that have particular significance." Kaiser Aetna v. United States, 444 U.S. 164, 175 (1979) (citations omitted).
These "ad hoc, factual inquires" must be conducted with respect to specific property, and the particular estimates of economic impact and ultimate valuation relevant in the unique circumstances.
452 U.S. at 294-95.
Accordingly, the "mere enactment" of the municipal planning statutes, or any local regulations promulgated pursuant thereto, will not support a successful takings claim. Id. at 297. The question of whether the statutes or any local regulations effect an uncompensated "taking" of private property instead requires a factual determination that is outside the scope of an opinion from this office. In an effort to guide the factual analysis, I have enclosed a copy of an opinion issued by one of my predecessors, Op. Att'y Gen. 2001-239, that discusses the principles to be applied in considering such a fact-based challenge. This opinion addresses the general question of whether an ordinance that conditions development upon the developer's providing certain easements constitutes a "taking."
Question 6 — Does the current situation of regulation of county residents without representation of county residents violate Due Process under the U.S. or Arkansas Constitutions?
Because county residents have the same rights as residents of a city with respect to mounting a challenge to land use regulations, I do not perceive a due process violation in this regard. See also Holt Civic Club v. City of Tuscaloosa, 439 U.S. 60 (1978) (rejecting a substantive due process challenge to statutes that extended certain municipal powers over those residing within three miles of city boundaries without permitting such residents to vote in municipal elections).
I believe your question instead implicates the Equal Protection Cause's one-person, one-vote requirement, the concern being that county residents in a city's five-mile extraterritorial area must be afforded the right to participate in municipal elections.[5] This issue was effectively resolved by the United States Supreme Court in Holt, supra, where the Court considered an equal protection claim brought against a city by nonresidents who were not allowed to vote in its elections. People residing in Holt, a small, unincorporated community on the outskirts of the City of Tuscaloosa, challenged an Alabama statute that subjected Holt residents to the city's police and sanitation regulations, to the criminal jurisdiction of the city's courts, and to the city's power to license businesses, trades, and professions, but did not give them the right to participate in the political processes of the city by voting in its elections. Id. at 61-63. The Court denied the equal protection challenge and stated:
From [our earlier] voting qualifications cases a common characteristic emerges: The challenged statute in each case denied the franchise to individuals who were physically resident within the geographic boundaries of the governmental entity concerned. [Citations omitted.] No decision of this Court has extended the `one man, one vote' principle to individuals residing beyond the geographic confines of the governmental entity concerned, be it the State or its political subdivisions. On the contrary, our cases have uniformly recognized that a government unit may legitimately restrict the right to participate in its political processes to those who reside within its borders. [Citations omitted.] . . . Appellants' argument that extraterritorial extension of municipal powers requires concomitant extraterritorial extension of the franchise proves too much.
Id. at 68-69.
The exercise of "extraterritorial" powers therefore does not, according to Holt, require a "concomitant extraterritorial extension of the franchise." Because valid geography-based restrictions on voting do not offend the principle of "one person, one vote," such restrictions are not subject to strict scrutiny; rather, the restrictions must only "bear some rational relationship to a legitimate state purpose." Id. at 70. Additionally, a court will uphold the restriction even without requiring a showing of an actual rational basis, so long as any conceivable rational basis for the restriction can be adduced — even a hypothetical one. See generally Ester v. National Home Ctrs., Inc., 335 Ark. 356, 981 S.W.2d 91(1998).
In my opinion, the requirement that persons who want to vote on city matters must also reside within its boundaries is rationally based. The courts in at least two other jurisdictions have so held, citing Holt, supra, and reasoning that residents of the city have a greater personal interest or stake in the city's affairs and in its growth. See Nielson v. City of California City, 133 Cal.App.4th 1296 (2005) and Massad v. New London, 43 Conn. Sup. 297, 652 A.2d 531 (1993). The Connecticut court further observed:
[Nonresidents] are not without any voice or say in the election of officials who govern their affairs. They are able to vote for . . . state and federal officers who exercise executive and legislative control over their affairs. And even as non-resident qualified taxpayers, they can continue, through their state representatives, to participate directly in the process which has created the present voting structure, and the powers of the city and state governments.
43 Conn. Sup. At 312.
Question 7 — Are there any other foreseeable issues this action may cause under state or federal law?
I cannot speculate, in the abstract, regarding any other foreseeable issues arising from a city's extraterritorial powers, particularly without reference to any specific exercise of authority.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] I should also note in responding to this, as well as your remaining questions, that when you inquire whether a quorum court can "establish a planning commission that exercises authority over" the described area, I assume you are referring to the quorum court's adoption of a development plan that covers the area, or perhaps zoning and land development regulations, as explained further herein. This clarification is necessary to dispel any implication from the phrasing of your questions that a quorum court has general power to define the authority of a planning commission (known as a "planning board" under the relevant statutes). The county judge may create a "county planning board," subject to the quorum court's approval. A.C.A. § 14-17-203(a) (Repl. 1998) ("The county judge of any county may, with the approval of the majority of the members of the county quorum court, create a county planning board.") While the quorum court "may elect to assume the powers, duties, and functions of the board[,]'" id. at (f), those powers, duties, and functions are generally established by statute. See A.C.A. § 14-17-205 (Repl. 1998).
[2] As noted above, cities located on navigable streams have zoning authority in this area. See A.C.A. § 14-56-413, supra at n. 2.
[3] An exception to cities' exclusive authority in this regard applies in cases where unincorporated areas are being developed with federal funds. A.C.A. § 14-17-210 (Repl. 1998).
[4] It should perhaps be noted that the county court and the county judge retain certain authority, both constitutional and statutory, over matters relating to roads and the internal improvement of the county. Ark. Const. art. 7, § 28 and amend. 55, § 3. See Op. Att'y Gen.2006-050. Because your questions focus on the authority of a county planning board, I will not elaborate upon this retained authority, but instead refer you to Op. 2006-050 for a discussion of potential issues in that regard.
[5] The "one person, one vote" principle reflects a particular application of the Equal Protection Clause of the Fourteenth Amendment (U.S. Const., amend. XIV). That principle, first enunciated in the "reapportionment cases" (see, e.g., Baker v. Carr, 369 U.S. 186 (1962), Reynolds v. Sims, 377 U.S. 533 (1964)), "means that as nearly as practical one man's vote . . . is to be worth as much as another's." Wesberry v. Sanders, 376 U.S. 1, 7-8 (1964). The principle has been extended to the election of local governmental bodies. Hadley v. Junior College District, 397 U.S. 50 (1970); Avery v. Midland County,390 U.S. 474 (1968). The guaranty has been expressed as follows: [A]s a general rule, whenever a state or local government decides to select persons by a popular election to perform governmental functions, the Equal Protection Clause of the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in that election. . . . Hadley, supra, at 56.